UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN V. MILLER,<br><br>   *Plaintiff*,<br><br>v.<br><br>MICHAEL & SON SERVICES, INC.,<br><br>   *Defendant*. | Civil Action No. 23 - 2455 (LLA) |

### MEMORANDUM OPINION

Plaintiff Ryan Miller brought this action against Defendant Michael & Son Services, Inc. for failure to pay proper wages under federal and District of Columbia law. After many months of litigation, the parties reached a settlement agreement to resolve their disputes and now jointly move for approval of that agreement. ECF No. 12. For the reasons explained below, the court will grant the motion.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court recounts the facts as alleged in the complaint. ECF No. 1. From March 2021 to December 2021, Mr. Miller worked as a plumber for Michael & Son. *Id.* ¶ 7. He provided plumbing services to Michael & Son's customers in Maryland and the District of Columbia but spent more than half of his working hours in the District. *Id.* ¶¶ 8-9. Even though Mr. Miller worked more than forty hours most weeks, Michael & Son "never paid [him] at the overtime rate of one and one-half times his regular rate for hours worked in excess of forty during each one-week period." *Id.* ¶¶ 10-11.

In August 2023, Mr. Miller filed suit and alleged that Michael & Son had failed to pay him overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*, and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.* ECF No. 1.

In October 2023, Michael & Son filed a motion to compel arbitration, ECF No. 6, which Mr. Miller did not oppose. The case was then reassigned to the undersigned. *See* Dec. 18, 2023 Docket Entry. The parties subsequently informed the court that they had submitted their dispute to arbitration and requested that the matter be stayed pending further developments. ECF No. 7. The court stayed the case and ordered periodic status reports on the progress of arbitration. *See* Feb. 26, 2024 Minute Order; Apr. 25, 2024 Minute Order; June 24, 2024 Minute Order; Aug. 21, 2024 Minute Order; Oct. 22, 2024 Minute Order.

In December 2024, the parties jointly filed a motion to dismiss the case and approve their proposed settlement agreement. ECF No. 12.

## II.   LEGAL STANDARDS

In most cases, parties can resolve their disputes privately and dismiss a lawsuit without court involvement. When a plaintiff brings an FLSA claim, however, additional steps are required to satisfy the Act's "statutory policy" of protecting workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Specifically, "FLSA rights cannot be abridged or otherwise waived by contract because such private settlements would allow parties to circumvent the purposes of the statute by agreeing on sub-minimum wages." *Beard v. D.C. Hous. Auth.*, 584 F. Supp. 2d 139, 143 (D.D.C. 2008). FLSA claims can thus be settled in one of two ways: (a) "through a settlement supervised by the Secretary of Labor," or (b) "through a settlement scrutinized and ratified by a

'court of competent jurisdiction.'" *Rivas Ferrera v. Foulger-Pratt Constr. Inc.*, 747 F. Supp. 3d 203, 208 (D.D.C. 2024); *see* 29 U.S.C. §§ 216(b), (c).

With respect to the second option, the FLSA "does not expressly mandate" preliminary approval of settlement agreements. *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 486 n.2 (D.D.C. 2019). And the D.C. Circuit "has not opined about whether judicial approval is required of FLSA settlements . . . or . . . whether such approval is a prerequisite for subsequent judicial enforcement of a private settlement." *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 129 (D.D.C. 2014). Even so, "courts in this district routinely review proposed settlements to avoid putting 'the parties in an uncertain position' regarding the validity of their settlement." *Rivas Ferrera*, 747 F. Supp. 3d at 209 (quoting *Carrillo*, 51 F. Supp. 3d at 131).

### III.   DISCUSSION

In reviewing a proposed FLSA settlement agreement, the court must assure itself of two things: (1) that "the agreement resolves a bona fide dispute—that is, it reflects a reasonable compromise over issues that are actually in dispute," and (2) that "the agreement is substantively fair." *Rivas Ferrera*, 747 F. Supp. 3d at 209 (quoting *Davis v. Kettler Mgmt.*, No. 21-CV-3351, 2022 WL 17146742, at *1 (D.D.C. Nov. 22, 2022)). The court should also review the reasonableness of any attorney's fees. *Id.* As is the case with most settlements between parties, there is a "strong presumption in favor of finding the settlement fair." *Id.* (quoting *Carrillo*, 51 F. Supp. 3d at 133).

#### A.   Whether the Agreement Resolves a Bona Fide Dispute

A settlement agreement resolves a bona fide dispute if it "reflects a reasonable compromise over issues that are actually in dispute." *Rivas Ferrera*, 747 F. Supp. 3d at 209 (quoting *Carrillo*, 51 F. Supp. 3d at 132). In the absence of a genuine dispute, "the statute's protections for

employees trump any purported settlement or waiver of the employees' rights to bring suit for FLSA violations." *Carrillo*, 51. F. Supp. 3d at 128.

The settlement agreement in this case satisfies this requirement. Both parties disagreed as to the proper amount of wages owed to Mr. Miller. Mr. Miller asserts that he worked more than forty hours during most weeks of his employment but was "never paid" at the overtime rate of 1.5 times his normal wages. ECF No. 1 ¶¶ 10-11. Michael & Son, meanwhile, claims that Mr. Miller was at all relevant times exempt from the provisions of the FLSA and DCMWA because he was a commissioned retail or service employee. ECF No. 12, at 4; *see* 29 U.S.C. § 207(i) (exempting an employee from the statute if his regular pay rate is more than 1.5 times the minimum wage and "more than half his compensation for a representative period (not less than one month) represents commissions on goods or services"). Under the agreement, Mr. Miller waives his rights to pursue the matter further, while Michael & Son resolves the claim while still "den[ying] any and all liability to [Mr. Miller]." ECF No. 12, at 4. The settlement agreement thus reflects the best possible resolution of the parties' disagreement while conserving time and resources. *Id.* at 4-5. The court therefore concludes that the settlement resolves a bona fide dispute.

### B. Whether the Agreement is Substantively Fair

Courts generally consider three factors when evaluating substantive fairness: "(1) whether the settlement stemmed from employer overreach; (2) whether it was the 'product of negotiation between represented parties following arm's length bargaining'; and (3) 'whether there exist serious impediments to the collection of a judgment by the plaintiffs.'" *Rivas Ferrera*, 747 F. Supp. 3d at 209 (quoting *Carrillo*, 51 F. Supp. 3d at 132).

### 1.     Employer overreach

The proposed agreement does not show any clear signs of employer overreach. A typical indicator of overreach is when a settlement amount lands far from the plaintiff's original demand. Here, the parties have not provided estimates as to the damages owed by either side.[1] While this prevents the court from evaluating "where the settlement amount falls between [Mr. Miller's] position and [Michael & Son's position]," *Sarceno v. Choi*, 78 F. Supp. 3d 446, 451 (D.D.C. 2015) ("*Sarceno II*"), the court recognizes that the parties are usually more knowledgeable about the particulars of their agreement, *id.* (explaining that "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" (quoting *Crabtree v. Volkert, Inc.*, No. 11-CV-529, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013))). Indeed, the lack of precise damages figures does not render an agreement unreasonable. Nor does it necessarily override the "strong presumption in favor of finding the settlement fair." *Rivas Ferrera*, 747 F. Supp. 3d at 209 (quoting *Carrillo*, 51 F. Supp. 3d at 133). The settlement calls for a total payout of $2,000 to Mr. Miller as "disputed unpaid wages" and "disputed liquidated damages." ECF No. 12-1, at 2. Given that Mr. Miller only worked at Michael & Son for roughly nine months, this appears to be a reasonable settlement amount for the claims alleged. Furthermore, both parties jointly represent that "the amount [Mr. Miller] will receive from [Michael & Son] pursuant [to] the Agreement is a fair valuation of the amount owed, given the facts that remain in dispute." ECF No. 12, at 6.

---

[1] While Mr. Miller is the plaintiff in this action, Michael & Son also brought a breach-of-contract claim arising out of the same events in Virginia state court. *See* ECF No. 12, at 2; *Michael & Son Servs. Inc. v. Miller*, No. GV23003760-00 (Fairfax Gen. Dist. Ct., Feb. 28, 2023). Michael & Son voluntarily dismissed that claim in favor of arbitration. ECF No. 12-1, at 1. Upon execution of the settlement agreement, both parties will resolve "all matters between and among them," including the breach-of-contract dispute. *Id.*

In addition, Mr. Miller's counsel—Zipin, Amster, & Greenberg LLC—"has extensive experience in litigating wage and overtime claims." ECF No. 12, at 6. Their judgment and expertise serve as significant safeguards against the risk of employer overreach. *See Rivas Ferrera*, 747 F. Supp. 3d at 210. As other judges of this court have held, counsel's "'extensive experience in pursuing and defending FLSA actions generally and familiarity with the underlying facts'" enables the court to "credit their representation 'that the amounts agreed upon are a reasonable compromise.'" *Id.* (quoting *Sarceno II*, 78 F. Supp. 3d at 451).

Because these considerations reassure the court that there was no employer overreach in this case, and because other indicators of such overreach are lacking, *see Sarceno v. Choi*, 66 F. Supp. 3d 157, 172 (D.D.C. 2014) ("*Sarceno I*") (explaining that (a) a plaintiff's ignorance as to his rights under the FLSA, (b) a lack of consultation between the plaintiff and an experienced an attorney, and (c) a language barrier for the plaintiff were all suggestive of employer overreach), this first requirement is satisfied.

2.   **Arm's-length bargaining**

The agreement was also the product of arm's-length negotiations between Mr. Miller and Michael & Son. "The hallmarks of an 'arm['s] length negotiation' involve parties with similar access to counsel after meaningful discovery and the absence of duress or coercion." *Sarceno I*, 66 F. Supp. 3d at 175. Both parties in this case are represented by counsel and—as explained above—Mr. Miller's attorneys possess substantial wage-and-hour litigation experience. The parties have also exchanged informal discovery, conducted detailed reviews of evidence, and conferred numerous times by phone and email before arriving at the proposed settlement. ECF No. 12, at 6. This is more than sufficient to satisfy the second requirement. *See, e.g.*, *Rivas Ferrera*, 747 F. Supp. 3d at 210 (holding the second requirement to be met where the parties

"thoroughly investigated potential claims and defenses, conducted meaningful informal discovery, and participated in several virtual conferences to try to reach an agreement").

### 3. Impediments to the collection of a judgment

The settlement also removes obstacles to recovery for Mr. Miller. Resolving a dispute short of trial or the completion of arbitration eliminates significant risks inherent in all litigation. By reaching an agreement that fully resolves the dispute now, both parties will avoid accruing additional fees and costs. The agreement also conserves time and energy. Both parties represent that they have "considered the potential value of [Mr. Miller's] claims, considered the strength of [Michael & Son]'s defenses and breach of contract counterclaim, and concluded that the proposed settlement provides a fair and reasonable resolution of all claims." ECF No. 12, at 6. This third requirement is therefore satisfied.

### C. Whether the Attorney's Fees Award is Reasonable

Finally, the court concludes that the attorney's fees in the agreement are reasonable. Per the settlement, Mr. Miller's counsel will receive $18,000 for their services. ECF No. 12-1, at 2. While courts are generally "reluctant to approve a settlement where the plaintiffs' attorneys receive more in compensation than the plaintiffs themselves," it is not an absolute bar to approval. *Carrillo*, 51 F. Supp. 3d at 134. Here, the attorney's fee amount and negotiation were kept entirely separate from Mr. Miller's recovery. *See id.* (approving the attorney's fee amount in part because it "appear[ed] to have been negotiated separately from the amount the plaintiffs will receive"). Both parties also state that under the *Laffey* Matrix—a mechanism for calculating the typical value of a lawyer's services in DCMWA and DCWPCL cases—Mr. Miller's counsel would be entitled to more than $30,000 in attorney's fees. ECF No. 12, at 7. In light of the significant discount taken by Zipin, Amster, & Greenberg LLC and the heavy presumption in favor of settlement

approval, the court concludes that the attorney's fee amount in the agreement is sufficiently reasonable to warrant approval. *See Rivas Ferrera*, 747 F. Supp. 3d at 211 (concluding that an attorney's fee amount was reasonable in part because it significantly undercut "the lodestar figure for Plaintiffs' counsel").

## IV.    CONCLUSION

For the foregoing reasons, the court will grant the parties' Joint Motion to Dismiss and Approve Settlement, ECF No. 12. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   June 23, 2025